## THE NORTHERN WAVE.

(District Court, E. D. Pennsylvania.    April 9, 1924.)

Nos. 149, 150, and 154 of 1920 and 2, 7, 14, 17, 22, 28, 52, 67, 111 of 1921.

**1. Maritime liens ⊜⇒37—Liens for supplies held to have preference over mortgage.**

Furnishers of supplies to a vessel on the order of the owner *held* entitled to a lien therefor as against a prior mortgage prohibiting such liens, which was recorded at another port and was not indorsed on the vessel's documents as required by Ship Mortgage Act, § 30, subsec. D (Comp. St. Ann. Supp. 1923, § 8146¼kkk), to give it the status of a preferred mortgage.

**2. Maritime liens ⊜⇒30—Furnisher of supplies entitled to lien, where reasonable inquiry would not have disclosed contract barring liens.**

Ship Mortgage Act, § 30, subsec. R (Comp. St. Ann. Supp. 1923, § 8146¼pp), providing that a furnisher of supplies shall not be entitled to a lien when he "knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason," the person ordering the supplies was without authority to bind the vessel therefor, does not bar a lien for supplies furnished the owner, even when no inquiry was made, when it appears that by investigation with reasonable diligence the existence of an agreement barring liens would not have been ascertained.

In Admiralty.    In the matter of the Steamship Northern Wave. On exceptions to commissioner's report on re-reference.    Exceptions overruled, and report confirmed.

See, also, 286 Fed. 400.

Biddle, Paul, Dawson & Yocum, Howard M. Long, Foley & Martin, F. J. Bowden, Wm. Findlay Brown, Charles B. Downs, Robert F. Irwin, Jr., and George W. Coles, U. S. Atty., all of Philadelphia, Pa., for exceptants.

THOMPSON, District Judge.    The only exceptions pressed at the argument were those filed by the United States.    The first three raise questions which were raised and determined upon exceptions filed to the commissioner's original report.    The fourth and fifth exceptions raise but one question.    As stated in the commissioner's report upon re-reference:

"It contends in brief that, because of the provisions of the mortgage on the steamship Northern Wave held by the United States, which mortgage provided that the mortgagor, the owner, was 'not to suffer nor permit to be continued any lien or charge having priority to or preference over the lien of this mortgage,' etc., its claim as mortgagee should be preferred to all maritime liens, because the lien claimants did not use due diligence to ascertain whether the owner of the vessel had authority to pledge it for supplies.    It bases its stand on the decision in United States v. Carver and Morell (The Clio) 260 U. S. 482, 43 Sup. Ct. 181, 67 L. Ed. 361, and on the decisions in The Buckhannon (C. C. A.) 299 Fed. 519, and Barge Northern 44 (C. C. A.) 289 Fed. 805."

The mortgage upon the Northern Wave was dated as of October 22, 1920, but was executed, acknowledged, and recorded in the custom house at Baltimore, Md., on November 20, 1920.    A certificate of deliv-

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ery of the vessel to the West Indian Navigation Company, Inc., as purchaser, on October 28, 1920, was executed on November 10, 1920. The certificate of registry issued by the collector of customs at Baltimore, Md., is dated December 14, 1920. At the time of the furnishing of supplies and rendering of services, while the vessel was lying in the port of Philadelphia, for which liens are claimed, there was then no indorsement upon the ship's documents required to make it a preferred mortgage, under Ship Mortgage Act 1920, § 30, subsec. D (Comp. St. Ann. Supp. 1923, § 8146¼kkk), and indorsement was not made until January 4, 1921. The commissioner distinguished the case from the Clio Case upon the ground that the vessel in that case was under charter, the person ordering supplies was not the owner, and the supply man was put upon inquiry.

In the Buckhannon Case, in which the bill of sale, referring to a mortgage which contained substantially the same provisions as contained in the mortgage in the present case, was recorded at New York, where the supplies were furnished, Judge Augustus N. Hand held the terms of section 3 of the Act of June 23, 1910 (now Comp. St. Ann. Supp. 1923, § 8146¼pp), "but nothing in this Act shall be construed to confer a lien where the furnisher knows, or by the exertion of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for the sale of a vessel, or for any other reason, the person ordering the repairs, supplies or other necessaries was without authority to bind the vessel therefor," are broad enough to cover want of authority contained in a mortgage. As Judge Hand said:

"Some interpretation must be put on the following words: 'Or for any other reason.'"

I see no reason to differ from the conclusions of the learned judge who decided that case under the facts there present. In that case the mortgage was not a preferred mortgage under the Ship Mortgage Act of 1920, but was recorded in the office of the collector of customs of the port of New York where the supplies were furnished. It is conceded in the present case that the lien claimants did not make any inquiry concerning the authority of the owner to bind the vessel. Prior to the decision in the Clio Case, where supplies were ordered by the owner upon the credit of the vessel, it was not held necessary to go back of the order of the apparent owner to ascertain whether he had bound himself under the terms of an agreement of sale or a mortgage not to subject the vessel to lien. The Yankee, 233 Fed. 919, 147 C. C. A. 593.

[1] In the present case the mortgage was recorded at another port, the vessel had been delivered under a certificate describing the West Indian Navigation Company as purchaser, and there was no indorsement of the mortgage, which recites that it is a preferred mortgage, upon the ship's papers, as required by the act of 1920. In Mr. Justice Holmes' opinion in the Clio Case, it is said:

"We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry; they call upon him to inquire. To ascertain is to find out by investigation. If

by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms, he was chargeable with notice of its terms."

[2] I do not think that Mr. Justice Holmes' language was intended to cover a case like the one before us. The mortgagee is protected by the act of 1920 in making the mortgage a preferred one by having it indorsed upon the ship's papers. Under these circumstances, what would reasonable diligence have revealed by investigation? If the lien claimants had examined the ship's papers, they would have shown that the West Indian Navigation Company was the owner of the vessel, and that there was no indorsement upon the ship's papers of the mortgage under which claim is made.

Would reasonable diligence require the lien claimants, knowing that a mortgagee could obtain a preferred status for his mortgage and obtain protection against liens by having it indorsed upon the ship's papers, to do more than examine the ship's papers? Would reasonable diligence suggest lack of diligence on the part of the party most interested in protecting the vessel against liens? Would reasonable diligence require the lien claimants to have an examination made of the records at Baltimore to ascertain whether a mortgage was recorded there, and whether the owner had by the terms of the mortgage limited his authority to create liens? I think not. Neither am I of the opinion that the ruling in the Clio Case is intended to bar a lien where inquiry has not been made, if it appears that by investigation with reasonable diligence the terms of the agreement barring liens would not have been ascertained.

The exceptions are overruled, the report of the commissioner confirmed, and distribution of the fund awarded in accordance with his report.

An appropriate decree may be presented.